UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ERNESTO LAFRIENZA, | § | |
| TDCJ No. 1854911, | § | |
| Petitioner, | § | |
| | § | |
| | § | EP-17-CV-140-PRM |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Ernesto Lafrienza's

[hereinafter "Petitioner"] pro se "Petition for a Writ of Habeas Corpus

by a Person in State Custody" (ECF No. 8) [hereinafter "Petition"],[1] filed

on June 6, 2017, and Respondent Lorie Davis's[2] [hereinafter

---

[1] "ECF No." refers to the Electronic Case Filing number for documents
docketed in this case. Where a discrepancy exists between page
numbers on filed documents and page numbers assigned by the ECF
system, the Court will use the latter page numbers.

[2] Although Petitioner named Warden Kevin Folley as Respondent, Lorie
Davis, the current Correctional Institutions Division Director, is the
proper respondent and is substituted as such. Fed. R. Civ. P. 25(d).

"Respondent"] "Motion for Summary Judgment" (ECF No. 15), filed on August 25, 2017, in the above-captioned cause.

In his Petition, Petitioner challenges Respondent's custody over him based on sentences imposed by the 34th Judicial District Court of El Paso County, Texas. He claims his counsel provided constitutionally ineffective assistance during his criminal proceedings. In her Motion for Summary Judgment, which the Court construes as an Answer, Respondent counters that Petitioner's claims lack merit.[3]

After reviewing the Petition, Answer, and state-court records, the Court agrees that Petitioner's claims are without merit. The Court accordingly denies Petitioner's Petition, denies Petitioner a certificate of appealability, and denies as moot all pending motions in this cause, if any.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Petitioner challenges Respondent's custody of him pursuant to judgments and sentences of the 34th District Court of El Paso County, Texas. A jury found Petitioner guilty on two counts of aggravated

---

[3] Because the Court construes Respondent's Motion for Summary Judgment as an Answer, the Court will direct the Clerk of the Court to terminate its status as a motion.

robbery with a deadly weapon and assessed punishment at concurrent terms of fifty years' imprisonment.[4]

The following factual background is taken from the Texas Court of Appeals' decision affirming Lafrienza's convictions and sentences:

> On May 31, 2012, Appellant was observed placing ten perfume bottles in his bag at a perfume store, Express Perfume, on Father Rahm Street, in downtown El Paso. After placing the perfume bottles in his bag, he left without paying for them. A witness called Chavez, the employee on duty at Express Perfume, around 3:00 p.m. to tell her what she had seen. Chavez called complainant Victor Rosales (Count I) and complainant Brandon Marquez (Count II)[5] stating she had been robbed and gave them both a description of Appellant.
>
> Marquez, riding a bike, and Rosales, on foot, went to look for Appellant with two walkie-talkies. Marquez identified Appellant in court as the individual he went looking for. Marquez wanted to recover the stolen perfume. Marquez saw Appellant with the bag of perfume bottles walking with a female. Marquez followed Appellant and observed Appellant hand the bag with perfumes to the female while Appellant walked to a Burger King restaurant.

---

[4] *See Lafrienza v. State*, 08-13-00121-CR, 2015 WL 4985349 (Tex. App.—El Paso Aug. 21, 2015, pet. ref'd).

[5] Trial Tr., vol. 3, 110, (direct examination of Brandon Marquez, Apr. 1, 2013), Aug. 25, 2017, ECF No. 16-5; Trial Tr., vol. 4, 9 (direct examination of Victor Rosales, Apr. 17, 2013), Aug. 25, 2017, ECF No. 16-6. Rosales and Marquez were employees of other nearby El Paso perfume stores owned by the same company which owned Express Perfume.

After Appellant veered off toward the Burger King, the female continued walking on. Marquez, communicating with the walkie-talkie, told Rosales to observe Appellant while he followed the female.

Marquez approached the female and asked her to return the merchandise to him. The female responded by striking Marquez with the bag of perfume bottles. After Marquez was hit with the bag, it ripped and the perfume fell to the ground. Marquez heard a scream, saw the Appellant yelling and running towards him. Marquez laid the bike down as Appellant came charging at him. Rosales was a few meters behind Appellant.

Appellant went towards Rosales with a pair of scissors attempting to stab Rosales. After Rosales ran away, Appellant turned to Marquez. Marquez ran away but saw Appellant grab the bike Marquez had left behind, with scissors in hand and begin to follow Marquez on the bike. Marquez ran to a vehicle in the Burger King drive-thru and asked the driver, Quezada, if he would call the police. Quezada testified Marquez approached his vehicle around 3:15 p.m. Quezada called the police.

Appellant was subsequently located and arrested. Marquez positively identified Appellant for the police. Marquez observed the police retrieve the pair of scissors from Appellant's back pocket.

Rosales testified that Appellant attempted to stab him and Marquez with the scissors. Rosales also called the police and gave them a description of Appellant. Rosales accompanied officers as they searched for the Appellant, and pointed Appellant out when they found him. Subsequent to Appellant's arrest, he told officers he could give the bike back if they would drop the charges against him.[6]

---

[6] *Lafrienza*, 2015 WL 4985349, at *1–2.

4

A grand jury "Indictment" returned on June 26, 2012, charged

Petitioner with two counts of aggravated robbery and asserted

Petitioner used a "deadly weapon, to wit: scissors."[7] The indictment

further alleged, for the purpose of enhancing Petitioner's sentence, that

he had a prior conviction on June 7, 2002, for felony robbery.[8] With the

Indictment, the District Attorney filed a "Notice of Habitualization,"

citing Petitioner's prior felony convictions for robbery and possession of

a controlled substance, with a view toward obtaining an enhanced

punishment range.[9]

When the State called Martha Diaz[10] and Amanda Chavez[11]

during its case-in-chief, Petitioner's counsel asked for a mistrial or

---

[7] Clerk's R. 9–10 (Indictment, June 26, 2012), Aug. 25, 2017, ECF No.
16-2.

[8] *Id.*

[9] *Id.* at 43–44 (Notice of Habitualization, Feb. 27, 2013).

[10] Trial Tr., vol. 3, 65–68 (direct examination of Martha Diaz, Apr. 16,
2013), Aug. 25, 2017, ECF No. 16-5. Diaz testified she was an employee
of a perfume store located across the street from Express Perfume. She
said she watched a man put bottles of perfume in a bag and leave
Express Perfume without paying for the perfume, at which time she
called an employee at Express Perfume to inform her that merchandise
had been stolen from the store.

continuance because they had no prior notice that the State intended to

call these witnesses and had no prior opportunity to investigate the

witnesses and their testimony.[12] The trial court took the motion under

advisement.[13] At the conclusion of the State's evidence, Petitioner's

counsel moved for a directed verdict, which the trial court denied.[14]

Petitioner's counsel also noted that they had filed a *Theus* motion,[15] and

---

[11] Trial Tr., vol. 3, 99–100 (direct examination of Amanda Chavez, Apr. 16, 2013), Aug. 25, 2017, ECF No. 16-6. Chavez testified that she worked at Express Perfume. She explained that while in the back of the store, she heard a noise in the front. She then received a call from Diaz, who told her someone had taken perfume from the store.

[12] Trial Tr., vol. 4, 6–7, Aug. 25, 2017, ECF No. 16-6.

[13] *Id.* at 7.

[14] *Id.* at 69.

[15] *See Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992) ("Federal courts of appeals have set out a number of factors to be considered in weighing the probative value of a conviction against its prejudicial effect. A non-exclusive list of such factors includes (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. . . . If . . . the past crime and the charged crime are similar, the third factor will militate against admission. The rationale behind this is that the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past

asked the trial court to allow Petitioner to testify free from impeachment based on his prior robbery conviction.[16] The trial court denied the *Theus* motion after a hearing.[17]

Petitioner did not testify at his trial.[18] Defense counsel argued to the jury that Petitioner's actions were necessary for self-defense and defense of a third person.[19] The trial court instructed the jury as to self-defense only as to the first count, with regard to Rosales.[20] The jury found Petitioner guilty as charged and assessed punishment at fifty years' imprisonment on each count.[21]

In his appeal, Petitioner argued that the trial court erred by denying his *Theus* motion to testify free from impeachment. Petitioner alleged that, due to this error, he declined to testify. This, in turn

---

pattern of conduct, instead of on the facts of the charged offense.").

[16] Trial Tr., vol. 4, 70–72.

[17] *Id.* at 72.

[18] *Id.* at 79–80.

[19] *Id.* at 109–12.

[20] *Id.* at 95.

[21] Clerk's R. 109 (J. of Conviction by Jury, Apr. 18, 2013), Aug. 25, 2017, ECF No. 16-2.

precluded him from receiving requested instructions on self-defense and defense of a third person in the jury charge because the trial record lacked evidence to support the inclusion of the instructions.[22] Petitioner also complained that the trial court erred when it denied his request for a jury instruction on the lesser-included offense of theft.[23] The appellate court determined "Appellant did not testify and has not preserved any error for our review. Issue One is overruled."[24] The appellate court further held "[g]iven our examination of the entire record, the evidence supports the conclusion the assaults occurred while in immediate flight of the commission of theft and does not raise a fact issue that Appellant is only guilty of theft."[25]

Petitioner sought a state writ of habeas corpus.[26] Therein, he asserted four grounds for relief related to the purported ineffective assistance of his counsel. First, he claimed that his counsel failed to

---

[22] *Lafrienza*, 2015 WL 4985349, at *3.

[23] *Id.*

[24] *Id.* at *4.

[25] *Id.* at *6.

[26] State Writ R. 31–48 (Application for Writ of Habeas Corpus, Mar. 6, 2017), Aug. 25, 2017, ECF No. 16-15.

8

secure the presence of "Defendant's sole witness (Melissa De Anda Madrid)," who "would have supplied a possible defense of self-defense and defense of a third person."[27] Petitioner maintained that, although he supplied his counsel with "the name and partial address and telephone number" of Madrid, his counsel failed to ask for the court's assistance in locating this witness.[28] Second, Petitioner noted that his counsel opted for the imposition of punishment by the jury rather than the trial court. He speculated that the "punishment imposed by a judge would be less [than] that imposed by a jury."[29] Third, Petitioner argued that his counsel failed "to pursue further effective cross-examination of . . . Officer Apodaca."[30] Finally, Petitioner insisted that his counsel failed to "seek out," investigate, and interview the State's witness, Martha Diaz, who was subpoenaed the day before trial.[31] In addition, Petitioner alleged a violation of his Fourth Amendment rights at the

---

[27] *Id.* at 36.

[28] *Id.* at 37.

[29] *Id.* at 38.

[30] *Id.* at 40.

[31] *Id.* at 42–43.

9

time of his arrest.[32]  The Texas Court of Criminal Appeals denied the writ without written order.[33]

In this habeas action Petitioner contends his counsel provided constitutionally ineffective assistance.[34]  Specifically, he asserts his trial counsel failed to (1) subpoena alibi witness Melissa De Anda Madrid, who was present with him on the day of the crime; (2) advise him that he could elect to have the trial court assess his punishment instead of the jury; (3) investigate the prosecution's lead witness, Martha Diaz; and (4) and effectively cross-examine Officer Apodaca to show "before [his] custodial interrogation . . . police . . . elicited statements without satisfying the Miranda warnings[.]"[35]

Respondent allows that the Petition is timely and not successive, and that Petitioner exhausted his claims in the state courts.[36]

---

[32] *Id.* at 44.

[33] *Id.* at Action Taken (Ernesto Lafarienza, Application No. WR-86,579-01, Apr. 5, 2017), Aug. 25, 2017, ECF No. 16-14.

[34] Pet 6–9, June 6, 2017, ECF No. 8.

[35] *Id.*

[36] Mot. for Summ. J. 5, Aug. 25, 2017, ECF No. 15.

Respondent contends, however, that the Court must deny the Petition because Petitioner's claims are without merit.[37]

## II. APPLICABLE LAW

### A. 28 U.S.C. § 2254

"[C]ollateral review is different from direct review,"[38] and the writ of habeas corpus is "an extraordinary remedy"[39] reserved for those petitioners whom "society has grievously wronged."[40] It "is designed to guard against extreme malfunctions in the state criminal justice system."[41] It provides an important, but limited, examination of an inmate's conviction and sentence.[42] Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow.

---

[37] *Id.* at 1.

[38] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[39] *Id.*

[40] *Id.* at 634.

[41] *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

[42] *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

"Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[43] They must generally defer to state court decisions on the merits[44] and on procedural grounds.[45] They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[46]

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'"[47] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[48] The focus of this well-developed standard "is not whether a federal court

---

[43] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[44] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[45] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[46] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[47] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

[48] 28 U.S.C. § 2254(d)(2) (2012).

believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[49] Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence.[50] Indeed, state courts are presumed to "know and follow the law."[51] Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding."[52] Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence.[53] The presumption of correctness applies not only to express findings of fact, but also to "unarticulated

---

[49] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[50] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").

[51] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[52] 28 U.S.C. § 2254(d)(2).

[53] *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).

findings which are necessary to the state court's conclusions of mixed law and fact."[54]

In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."[55] "If this standard is difficult to meet, that is because it was meant to be."[56]

## B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be

---

[54] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

[55] *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

[56] *Id.* at 102.

said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[57]

A habeas petitioner has the burden to prove both prongs of the *Strickland* test.[58]

When deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[59] Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise.[60] Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable.[61] Counsel's performance cannot be considered

---

[57] *Strickland*, 466 U.S. at 687.

[58] *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008).

[59] *Strickland*, 466 at 688-89.

[60] *Id.* at 689.

[61] *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289–90 (5th Cir. 2011).

deficient or prejudicial if counsel fails to raise a non-meritorious argument.[62]

Moreover, the Court must review a state petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of § 2254(d),"[63] and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold."[64] Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[65]

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable

---

[62] *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

[63] *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

[64] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[65] *Harrington*, 562 U.S. at 101.

argument that counsel satisfied *Strickland's* deferential
standard.[66]

## III. ANALYSIS

### A. Failure to subpoena an alibi witness

Petitioner contends his counsel provided ineffective assistance

when they failed to subpoena Melissa De Anda Madrid. He maintains

Madrid "would have supplied a possible defense of self-defense . . . ."[67]

He also admits Madrid was "an accomplice" in the robbery.[68] Petitioner

adds his counsel should have asked the trial court for assistance to

secure Madrid's presence at trial.[69] Petitioner raised this issue in his

---

[66] *Id.* at 105.

[67] Pet. at 6.

[68] *Id.*

[69] *Id.* at 7. When arguing the *Theus* motion, defense counsel stated:

> Specifically, the defendant in this case, since we couldn't find
> his girlfriend in this case, Your Honor—she was nowhere to
> be found as per our first motion for continuance. While we
> believe that there are—there is some evidence that there is
> self-defense and defense of third person, Your Honor, it
> would be more compelling if our client were to be allowed to
> testify.

state habeas action, and the Court of Criminal Appeals denied him relief.[70]

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."[71] To establish prejudice, a habeas petitioner must demonstrate "not only that the testimony would have been favorable, but also that the witness would have testified at trial."[72]

Petitioner makes only conclusory allegations that Madrid would have testified in his favor. "[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal."[73] Petitioner's assertion is

---

Tr. Trans., vol. 4, 70, ECF No. 16-6.

[70] State Writ R. at Action Taken.

[71] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir.2008)).

[72] *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

[73] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("Without a specific affirmative showing of what the missing evidence or testimony would

insufficient to meet his burden of establishing either deficient performance or prejudice.

Additionally, Petitioner provides no evidentiary support for his allegation that Madrid would have been available to testify or that her testimony would have been favorable, relevant, or admissible. Moreover, because Madrid was an accomplice, she likely would have invoked her Fifth Amendment right to remain silent rather than testify on Petitioner's behalf. Petitioner's failure to produce an affidavit or similar evidentiary support from Madrid is fatal to his ineffective assistance claim.[74]

Because Petitioner has not established that counsel's performance was deficient or resulted in prejudice, the state court's denial of his claim was not an unreasonable application of or contrary to *Strickland*.

---

have been, 'a habeas court cannot even begin to apply *Strickland*'s standards.'"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

[74] *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

## B. Election to have the trial court assess punishment

Petitioner asserts his counsel was ineffective for failing to advise him that he could elect to have the trial court assess his punishment.[75] Petitioner asserts he "went along" with counsel's decision to have the jury assess punishment, "not knowing he had other choices of punishment."[76] Petitioner contends "[i]f better explained of other choices available the outcome of sentence would [have] been different."[77] Petitioner raised this claim in his state habeas action, and relief was denied.[78]

Petitioner makes only a conclusory allegation that counsel failed to properly advise him. As the Court noted above, "conclusory allegations unsupported by specifics [are] subject to summary dismissal."[79]

---

[75] Pet. 6–7.

[76] *Id.* at 7.

[77] *Id.*

[78] State Writ R. at Action Taken.

[79] *Blackledge*, 431 U.S. at 74.

Furthermore, the record does not support Petitioner's claim. The record includes an "Election of Sentencing" form signed by Petitioner.[80] The form has two sentencing options that Petitioner could have selected: "COURT" and "JURY."[81] This document confirms that Petitioner was on notice of his options and still agreed to sentencing by a jury.

Because Petitioner is unable to establish either deficient performance or prejudice, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

## C. Failure to investigate the prosecution's witness

Petitioner contends his counsel was ineffective for failing to investigate Diaz, who testified for the State that she witnessed him placing bottles of perfume in a bag and leaving Express Perfume without paying for the perfume.[82] Petitioner raised this claim in his

---

[80] Clerk's R. 77 (Election of Sentencing, Apr. 15, 2013), ECF No. 16-2.

[81] *Id.*

[82] Pet. 8, 9.

state habeas action, but the Texas Court of Criminal Appeals denied him relief.[83]

Pursuant to *Strickland*, counsel must either undertake a reasonable investigation or make an informed strategic decision that investigation is unnecessary.[84]

In this case, Petitioner's counsel argued to the trial court that the State calling Diaz was a surprise, and moved to exclude her as a witness. The trial court denied the motion.[85] Petitioner's counsel then cross-examined Diaz.[86] They also moved for a continuance and mistrial based on not having time to investigate Diaz.[87] The trial court observed that trial counsel effectively cross-examined Diaz, and denied the motions.[88]

---

[83] State Writ R. at Action Taken.

[84] *Strickland*, 466 U.S. at 690–91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013).

[85] Trial Tr., vol. 3, 13–18, ECF No. 16-5.

[86] *Id.* at 70–73, 76–83 (cross-examination of Martha Diaz).

[87] Trial Tr., vol. 4, 6–7, ECF No. 16-6.

[88] *Id.*

Under these circumstances, Petitioner has not overcome the strong presumption that trial counsel rendered adequate assistance and has not satisfied his burden of establishing any prejudice. Because Petitioner has not shown deficient performance or prejudice with regard to counsel's actions, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*.

## D.   Failure to "cross–examine" Officer Apodaca

Petitioner contends his counsel was ineffective because they "failed to pursue further and effective[ly] cross-examin[e]" the "State['s] witness, Officer Apodaca," arguing "[t]he trier of fact only got the opportunity to hear the testimony of Officer Reyes, when in fact effective cross-examination of Officer Apodaca was crucial."[89]  Petitioner maintains Officer Apodaca's testimony was necessary because the officer coerced him into making incriminating statements.[90]  Petitioner alleges that Officer Apodaca "was subpoenaed and available for cross-

---

[89] Pet. 8.  The Court notes the State did not call Officer Apodaca as a witness and, accordingly, defense counsel did not have the opportunity to cross-examine the officer at all.

[90] *Id.* at 9.

examination, and the trial court denied Applicant's trial rights."[91] Petitioner raised this claim in his state habeas action, and relief was denied.[92]

Petitioner is unable to establish prejudice arising from this alleged error. To establish prejudice by counsel's failure to call a witness, a habeas petitioner must demonstrate "not only that the testimony would have been favorable, but also that the witness would have testified at trial."[93] To succeed on this claim, a petitioner must proffer an affidavit, or similar evidentiary support, from the uncalled witness.[94]

Furthermore, the only testimony regarding an "incriminating statement" was that offered by Officer Reyes, who testified:

> While me and—my partner was typing the report. We were speaking about what had happened, going over—he was explaining to me what to do and everything with the case. And Mr. Lafrienza called us over to his cell and told us that he could give us the bike back if we would drop the charges placed on him.[95]

---

[91] *Id.*

[92] State Writ R. at Action Taken.

[93] *Evans*, 285 F.3d at 377.

[94] *Sayre*, 238 F.3d at 636.

[95] Trial Tr., vol. 4, 54 (direct examination of Luis Reyes), ECF No. 16-6.

Other than the above-quoted statement, no other testimony of Petitioner's "incriminating statements" was elicited at trial. Petitioner makes only a conclusory statement that any testimony by Officer Apodaca would have been favorable to him. Because Petitioner is unable to establish that counsel's failure to subpoena Officer Apodaca to testify was deficient performance and he is unable to establish that he was prejudiced by this alleged failure, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

### E. State Court Conclusions

In sum, the Texas Court of Criminal Appeals has already considered and rejected Petitioner's ineffective-assistance-of-counsel claims on state habeas review.[96] Petitioner has not shown that the state court's conclusions were either contrary to federal law, as clearly established by the holdings of the Supreme Court, or involved an unreasonable application of such law. Further, the Court must presume the state court's express and implicit factual findings were

---

[96] State Writ R. at Action Taken.

sound.[97] Petitioner has failed to show the state court's decisions were based on unreasonable determinations of the facts in light of the record before it. Finally, Petitioner has not made a reasonable argument that his counsel failed to satisfy *Strickland's* deferential standard. In other words, he has failed to show his counsel provided constitutionally ineffective assistance. Petitioner is, therefore, not entitled to § 2254 relief.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[98] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[99] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those

---

[97] 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010).

[98] 28 U.S.C. § 2253(c)(1).

[99] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

issues on which a certificate of appealability is granted.[100] Although

Lafrienza has not yet filed a notice of appeal, this Court must

nonetheless address whether he is entitled to a certificate of

appealability.[101]

A certificate of appealability "may issue . . . only if the applicant

has made a substantial showing of the denial of a constitutional

right."[102] In cases where a district court rejects a petitioner's

constitutional claims on the merits, "[t]he petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong."[103] To warrant a grant of the

certificate as to claims that the district court rejects solely on

---

[100] *See* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required[.]"); *see also United States v. Kimler*, 150 F.3d 429, 431 & n.1 (5th Cir. 1998) (explaining that it is well established that a circuit judge may address an issue not certified by a district court if the petitioner makes (1) an explicit request, and (2) a substantial showing of the denial of a constitutional right).

[101] *See* 28 U.S.C. foll. 2254 R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[102] 28 U.S.C. § 2253(c)(2).

[103] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[104] Here, Petitioner is not entitled to a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the Court's rulings debatable.

## V.    CONCLUSION AND ORDERS

After carefully reviewing the record, and for the reasons stated above, the Court concludes that Petitioner is not entitled to § 2254 relief. The Court also finds Petitioner is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that because the Court construes the Respondent's "Motion for Summary Judgment" (ECF No. 15) as an Answer, the Clerk of the Court shall terminate the pleading's status as a motion.

**IT IS FURTHER ORDERED** that Petitioner Ernesto Lafrienza's

[104] *Id.*

pro se "Petition for a Writ of Habeas Corpus by a Person in State Custody" (ECF No. 8) is **DENIED** and his civil case is **DISMISSED WITH PREJUDICE**.

IT IS ALSO ORDERED that a certificate of appealability is **DENIED**.

IT IS ADDITIONALLY ORDERED that all pending motions are **DENIED AS MOOT**.

IT IS FINALLY ORDERED that the District Clerk shall **CLOSE** this case.

SIGNED on this _27_ day of **December, 2017**.


_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE